

**FILED**
9/3/2019
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

UNITED STATES OF AMERICA

v.

JUSTIN HILL,
also known as "J Boo"

Nos.    18 CR 50034-5
        18 CR 50018-1

Judge John J. Tharp Jr.

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant JUSTIN HILL (also known as "J Boo"), and his attorney, GLENN JAZWIEC, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.    The indictment in Case No. 18 CR 50034 charges defendant with conspiracy to distribute a controlled substance, namely mixtures and substances containing a detectable amount of heroin and mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 846.

3.    In addition, in Case No. 18 CR 50018, the United States has filed a motion for a rule to show cause as to why defendant's supervised release should not be revoked ("Revocation Motion"), alleging that defendant violated the conditions of his supervised release by committing a federal crime, as charged in Case No. 18 CR 50034.

4.    Defendant has read the charge against him contained in the indictment in Case No. 18 CR 50034 and the allegation contained in the Revocation Motion filed in Case No. 18 CR 50018, and the charge and allegation have been fully explained to him by his attorney.

5.    Defendant fully understands the nature and elements of the crime with which he has been charged and the supervised release violation he is alleged to have committed in the Revocation Motion.

### Charges to Which Defendant Is Pleading Guilty

6.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment in Case No. 18 CR 50034, which charges defendant with conspiracy to distribute a controlled substance, namely mixtures and substances containing a detectable amount of heroin and mixtures and substances containing a detectable amount of cocaine heroin, in violation of Title 21, United States Code, Section 846. In addition, defendant agrees to admit voluntarily to the allegation in paragraph 1 of the Revocation Motion in Case No. 18 CR 50018, which alleges that defendant violated the conditions of his supervised release by committing a federal crime.

### Factual Basis

7.    Defendant will plead guilty to the indictment in Case No. 18 CR 50034 and admit to the allegation in the Revocation Motion in Case No. 18 CR 50018 because he is in fact guilty of the charge contained in the indictment and did in fact

2

violate the condition of his supervised release as alleged in the Revocation Motion. In pleading guilty and admitting to the allegation, defendant admits the following facts and that those facts establish his guilt of the charge alleged in the indictment beyond a reasonable doubt and of the supervised release violation alleged in the Revocation Motion by preponderance of the evidence, and constitute relevant conduct pursuant to Guideline § 1B1.3:

Beginning in or about May 2018 and continuing through on or about July 11, 2018, at Rockford, in the Northern District of Illinois, Western Division, and elsewhere, defendant did conspire with Tyjuan Anderson (also known as "Ace"), Lumont Johnson (also known as "Skinny"), and others to knowingly and intentionally distribute a controlled substance, namely mixtures and substances containing a detectable amount of heroin, a Schedule I Narcotic Controlled Substance, and mixtures and substances containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846.

As part of the conspiracy, defendant, Anderson, and Johnson shared their supplies of narcotics with each other. In one instance, Anderson contacted defendant to obtain heroin from defendant that Anderson needed to sell to one of Anderson's customers. Defendant provided the heroin to Anderson, knowing that Anderson intended to sell it to his customer. In another instance, Johnson contacted Anderson about obtaining cocaine, and Anderson referred Johnson to defendant to obtain the

cocaine. Anderson and defendant also discussed Johnson's desire to obtain cocaine from defendant, and defendant once met with Anderson and Johnson at Anderson's residence to distribute narcotics to Johnson. The meeting was arranged by Anderson. In another instance, defendant contacted Anderson attempting to obtain narcotics from Anderson.

As part of the conspiracy, defendant, Anderson, and Johnson warned each other about police tactics. Anderson, for example, advised defendant about law enforcement collecting garbage as an investigative technique, and defendant contacted Anderson when defendant believed that law enforcement had collected his garbage for such purposes. Defendant also warned Anderson when defendant knew that there was police surveillance near an alleyway Anderson frequently used to distribute narcotics. Defendant acknowledges that Anderson warned or attempted to warn Johnson of police surveillance in the area where Anderson and Johnson conducted drug-trafficking activities.

As part of the conspiracy, Anderson provided advice to defendant about how to operate as a successful drug trafficker. Anderson advised defendant about how he should manage his money as a drug trafficker. Anderson advised defendant not to distribute certain controlled substances, namely fentanyl, and advised defendant how to instead make the narcotics he distributed to his customers more potent so that he did not need to mix them with fentanyl. Anderson also advised defendant on how to build up defendant's drug inventory. In addition, defendant sought advice from

4

Anderson on disputes that came up between defendant and other individuals involved in drug trafficking. In one instance, for example, defendant sought Anderson's advice on how to account for the weight of packaging in determining the weight of narcotics being exchanged.

As part of the conspiracy, defendant and Anderson conferred with each other about the status of the narcotics supply on the streets at times and about potential suppliers of narcotics from whom defendant and Anderson could obtain narcotics. As part of the conspiracy, defendant and Anderson also conferred about pooling their resources in order to buy and sell larger quantities of narcotics and increase their profitability from distributing narcotics.

As part of the conspiracy, Anderson loaned a vehicle and money to defendant to assist defendant in building up his drug-trafficking operation.

Defendant admits that the amount of controlled substances that were distributed within the scope of the conspiracy and in furtherance of the conspiracy by defendant or other members of the conspiracy that were reasonably foreseeable to defendant was at least five ounces (140 grams) of heroin, at least one ounce (28 grams) of powder cocaine, and at least one ounce (28 grams) of cocaine base in the form of crack cocaine.

### Maximum Statutory Penalties

8.     Defendant understands that the charge to which he is pleading guilty in Case No. 18 CR 50034 carries the following statutory penalties:

5

a.    A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $1,000,000. Defendant understands that the judge may impose a term of probation of 1-5 years. Defendant further understands that, if the judge imposes a term of imprisonment, the judge also must impose a term of supervised release of at least 3 years, and up to any number of years, including life.

b.    Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

9.    Defendant further understands that with respect to Case No. 18 CR 50018:

a.    Pursuant to Title 18, United States Code, Section 5383(g), defendant's supervised release may be revoked, and the judge may impose a sentence of up to 2 years' imprisonment upon revocation. Defendant understands that the judge may reimpose a term of supervised release following any term of imprisonment that is imposed upon revocation. Defendant further understands that the length of any supervised release that is reimposed may be any number of years, including life, minus any term of imprisonment the judge imposes upon revocation.

b.    Defendant understands that the court may order that any sentence of imprisonment imposed in Case No. 18 CR 50018 be served consecutively to any sentence of imprisonment imposed in Case No. 18 CR 50034.

## Sentencing Guidelines Calculations

10.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

11.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

        a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

b.    **Offense Level Calculations**.

i.    The base offense level is 24, pursuant to Guideline §§ 2D1.1(a)(5) and (c)(8) because the offense involved a total quantity of controlled substances equivalent to at least 100 kilograms but less than 400 kilograms of Converted Drug Weight (140 grams of heroin, 28 grams of powder cocaine, 28 grams of crack cocaine).

ii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a 2 level reduction in the offense level is appropriate.

iii.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional 1 level reduction in the offense level.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 8 and defendant's criminal history category is IV:

i. On or about August 15, 2001, defendant pled guilty to murder in Winnebago County Circuit Court and was sentenced to imprisonment. On or about October 24, 2016, a judge granted defendant's post-conviction motion to withdraw his guilty plea. That same day, defendant was convicted of second-degree murder pursuant to a guilty plea, and was sentenced to 15 years' imprisonment and 2 years' supervised release. This sentence results in 3 criminal history points pursuant to Guideline § 4A1.1(a).

ii. On or about November 29, 1999, defendant was convicted in the United States District Court for the Western District of Tennessee of conspiracy to distribute cocaine and cocaine base. On or about February 23, 2000, defendant was sentenced to 71 months' imprisonment and 3 years' supervised release. On or about July 7, 2017, the district court reduced defendant's sentence to 18 months' imprisonment. Defendant completed this term of imprisonment on or about February 9, 2018. This sentence results in 3 criminal history points pursuant to Guideline § 4A1.1(a).

iii. On or about February 11, 1999, defendant was convicted in Winnebago County Circuit Court of obstructing service of process and playing a game

9

of chance, and was sentenced to 16 days' jail on each count, to be served concurrently. This sentence does not result in any criminal history points pursuant to Guideline § 4A1.2(e).

        iv.     On or about January 19, 1999, defendant was convicted in General Sessions Court of Obion County, Tennessee of possession of marijuana, and was sentenced to a suspended term of 11 months and 29 days in jail and a term of probation. This sentence does not result in any criminal history points pursuant to Guideline § 4A1.2(e).

        v.     On or about July 23, 1998, defendant was convicted in Winnebago County Circuit Court of possession of 2.5-10 grams cannabis, and was sentenced to 12 months' conditional discharge. This sentence does not result in any criminal history points pursuant to Guideline § 4A1.2(d).

        vi.     On or about November 4, 1997, defendant was convicted in Winnebago County Circuit Court of disorderly conduct, and was sentenced to court supervision. This sentence does not result in any criminal history points pursuant to Guideline § 4A1.2(d).

        vii.     Pursuant to Guideline § 4A1.1(d), 2 criminal history points are added because defendant committed the instant offense while under a criminal justice sentence, namely supervised release as described above.

        d.    **Career Offender.** Defendant is a career offender, pursuant to Guideline § 4B1.1(a), based upon two or more prior felony convictions of a crime of

violence or a controlled substance offense, as set forth in paragraphs 13(c)(i) and 13(c)(ii). Therefore, pursuant to Guideline § 4B1.1(b), the offense level is 32, or 29 if defendant receives 3 levels in reductions under Guideline § 3E1.1, because the offense of conviction carries a statutory maximum of 20 years' imprisonment and this offense level is greater than the otherwise applicable offense level. In addition, pursuant to Guideline § 4B1.1(b), defendant's criminal history category is VI.

e. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level for the charge in Case No. 18 CR 50034 is 29, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory sentencing guidelines range of 151 to 188 months' imprisonment, in addition to any supervised release and fine the Court may impose. In addition, based on the facts now known to the government, the defendant's anticipated advisory sentencing guidelines range in Case No. 18 CR 50018 is 18 to 24 months' imprisonment pursuant to Guidelines §§ 7B1.1 and 7B1.4.

f. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation

11

and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

12.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

13.    Each party is free to recommend whatever sentence it deems appropriate in Case Nos. 18 CR 50034 and 18 CR 50018. Defendant understands that the government may recommend that any term of imprisonment imposed in Case No. 18 CR 50018 be ordered to run consecutively to any term of imprisonment imposed in Case No. 18 CR 50034.

14.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea or his admission to the allegation in the Revocation Motion.

15.    Defendant agrees to pay the special assessment of $100 due in Case No. 18 CR 50034 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

16.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in Case No. 18 CR 50034 and the resolution of the Revocation Motion in Case No. 18 CR 50018.

17.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

13

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

18.     Defendant understands that by pleading guilty and admitting the allegation in the Revocation Motion, he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him

14

unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Revocation rights.** Defendant further understands that by admitting the allegation in the Revocation Motion, defendant is waiving his right to a revocation hearing before a judge.

i. At a revocation hearing, defendant would have the opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear.

ii. At a revocation hearing, the government would be required to prove the supervised release violation by a preponderance of the evidence.

iii. At a revocation hearing, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial and/or revocation hearing, and may only appeal the validity of this plea of guilty and admission to the allegation in the Revocation Motion and the sentence(s) imposed. Defendant understands that any appeal in must be filed within 14 calendar days of the entry of the judgment of conviction in that case. Defendant further understands that if he wishes to appeal the judgments in both Case No. 18 CR 50034 and Case No. 18 CR 50018, he must file an appeal in each case.

16

19.     Defendant understands that by pleading guilty to the indictment and admitting the allegations in the Revocation Motion, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

20.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

21.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of

justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

22.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

23.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

24.    Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

18

### Conclusion

25.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

26.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27.     Should the judge refuse to accept defendant's plea of guilty in Case No. 18 CR 50034 or admission in Case No. 18 CR 50018, this Agreement shall become null and void and neither party will be bound to it.

19

28.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty to the indictment or admit to the allegation in the Revocation Motion.

29.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE:    9 / 3 / 2019

JOHN R. LAUSCH, JR.
United States Attorney

TALIA BUCCI
Assistant U.S. Attorney

JUSTIN HILL
Defendant

GLENN JAZWIEC
Attorney for Defendant